IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK DAVIDSON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No.  2:23-CV-1870-DMC<br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 7 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 13 and 16.

        The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1  Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2  If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3  If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 8, 2021. See CAR 17.[1] In the application, Plaintiff claims disability began on August 14, 2018. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on June 22, 2022, before Administrative Law Judge (ALJ) Vincent A. Misenti. In an August 2, 2022, decision, the ALJ concluded Plaintiff was not disabled through the date last insured – December 31, 2020 – based on the following relevant findings:

1. Through the date last insured, the claimant had the following severe impairment(s): degenerative disease of the lumbar spine, cirrhosis of the liver; pancytopenia; obesity, diabetes mellitus, type II.

2. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3. Through the date last insured, the claimant had the following residual functional capacity: the claimant can perform light work; the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours; and sit for six hours; claimant can climb ramps and stairs occasionally; and should never climb ladders, ropes, or scaffolds; claimant can stoop frequently; balance frequently; kneel frequently; crouch frequently, and crawl occasionally.

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, and the Medical-Vocational Guidelines, through the date last insured, the claimant wass capable of performing past relevant work as a gate guard (DOT Code 372.667-030, light, semi-skilled work, with an SVP of 3) and security guard (DOT Code 372.667-034, light, semi-skilled work, with an SVP of 3); this work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

See CAR 20-28.

After the Appeals Council declined review on July 3, 2023, this appeal followed.

/ / /

/ / /

/ / /

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on October 26, 2023, ECF No. 10.

4

## III.  DISCUSSION

In his motion for summary judgment, Plaintiff argues: (1) the ALJ improperly rejected Plaintiff's subjective statements and testimony; and (2) because the ALJ improperly rejected Plaintiff's subjective statements and testimony, the ALJ relied on vocational expert testimony which was based on incomplete hypothetical questions. See ECF No. 13-1, pg. 2.

### A.  **Evaluation of Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

/ / /

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable

to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony in determining Plaintiff's residual functional capacity.  See CAR 24-26.  The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleges he is unable to work due to osteoarthritis of the back, shoulders, and neck. He described worsening neuropathy causing constant, dull pain in his legs and back. The claimant reported that his back pain is worse with standing and walking. He stated he has been using a cane he received from the VA for the last five years. He reported he uses it whenever he goes out of the house. The claimant reported he is not currently on any medication for his back pain, but stated he sometimes uses marijuana for back pain. In addition to back and leg pain, the claimant described bilateral shoulder pain and a history of surgery on the left shoulder. He stated he has received shoulder injections in the past. He reported stomach and bowel problems and depression. The claimant reported that his diabetes was controlled with insulin, but he recently had to increase his insulin as his prior dose was not effective. The claimant stated he is able sit for ten minutes at a time before needing to change position and can stand for five to ten minutes before needing to sit down. He is able to walk about 100 yards at a time and can lift ten pounds at a time. The claimant stated that he no longer drives due because his diabetic neuropathy makes it difficult to use the accelerator and brakes. He stated that his adult son and friend help him get around and his son helps with laundry. The claimant reported that on a daily basis, he helps his six-year-old granddaughter with schoolwork, prepares her meals, and helps her get ready for school. He stated he does not go out much except to shop and to pay bills /finances.

CAR 24.

The ALJ gave little weight to this evidence and provided the following rationale to support the determination:

> The undersigned finds that claimant's allegations to not be entirely consistent with the evidence for two main reasons. The first reason is the inconsistency between the claimant's allegations and the objective medical evidence discussed below. The claimant not generally received the type of medical treatment one would expect for a totally disabled individual. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weigh in the claimant's favor, but the medical records reveal that the medications have been somewhat effective in controlling the claimant's symptoms. For example, the claimant's diabetes has come under control with the use of insulin (B1F/9 33, 65). Overall, the claimant's allegations are not consistent with the record taken

> as a whole, and the objective evidence in the record does not support the claimant's allegations.
>
> The second reason the undersigned finds the claimant's allegations not entirely consistent with the evidence is the claimant's many reportedly intact activities of daily living. The claimant has described daily activities, both in writing and at the hearing, that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, the claimant reported working in his yard (B2F/168). He also described caring for his six-year-old granddaughter, including helping her with homework, getting her ready for school, and preparing meals for her (Hearing Testimony).
>
> To the extent that the claimant's allegations of limitation are consistent with the evidence, the undersigned has accommodated them in the above residual functional capacity.

CAR 25.

The ALJ next outlined Plaintiff's longitudinal medical history based on the objective medical evidence of record. See id. at 25-26. Specifically as to the need for an assistive device, the ALJ stated:

> With regard to the claimant's reported need for an assistive device, the undersigned finds that an assistive device is not medically required. To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain, and any other relevant information). Here, the claimant's providers occasionally noted that he used a cane, however, the record does not document consistent use of a cane, nor does it document a prescription from a medical provider and a description of the circumstances under which the cane is necessary. Therefore, it is determined to be not medically required.

CAR 26.

Here, the ALJ rejected Plaintiff's subjective statements and testimony because they were inconsistent with the objective evidence and because they were inconsistent with Plaintiff's daily activities. In noting inconsistency with the objective evidence, the ALJ made specific reference to Plaintiff's report that he was not taking any pain medications.

///

///

///

The Court finds that the ALJ's reliance on Plaintiff's activities of daily living was misplaced. As discussed above, daily activities must be shown to translate to the ability to engage in full-time competitive work before the ALJ may cite them to discount a claimant's credibility. The ALJ did not do so here. Simply being able to assist with the care of his granddaughter does not suggest an ability to engage in full-time sustained work activity, particularly given Plaintiff's other stated limitations as to sitting, standing, and lifting weight.

The ALJ in this case, however, did not rely exclusively on daily activities. The ALJ also cited inconsistency with the objective evidence, notably the lack of pain medication for Plaintiff's reported back pain. The ALJ also cited Plaintiff's report that his other conditions were well-controlled with prescribed medication. Finally, the ALJ noted that, while Plaintiff indicated the need to use a cane, the objective evidence reflects to such medical necessity supported by a prescription for an assistive device. Setting aside the ALJ's improper reliance on Plaintiff's activities of daily living, these other factors provide adequate legal and factual support for the ALJ's finding.

**B.     Hypothetical Questions**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his

or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical question based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ obtained vocational expert testimony and determined that Plaintiff was capable of performing his past relevant work.  See CAR 27.  The ALJ stated as follows:

> The record shows that from 2000 through 2009, the claimant worked full-time as a security guard for Raley's and Williams Cole, Inc., earning $12.00 per hour and working 40 hours per week (B2E/4; B11D/1). According to the testimony of vocational expert, Thomas Sartoris, this work is classified as a gate guard (DOT Code 372.667-030, light, semi-

> skilled work, with an SVP of 3) and security guard (DOT Code 372.667-034, light, semi-skilled work, with an SVP of 3). Mr. Sartoris testified that the work as performed by the claimant was light work. As required by SSR 82-62, this work was substantial gainful activity, performed long enough for the claimant to achieve average performance and was performed within the relevant time period. Mr. Sartoris testified that a hypothetical individual with the claimant's residual functional capacity would be able to perform the claimant's past relevant work as he performed it, and as it is generally performed according to the DOT.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed. The claimant's limitation to light work with frequent postural activity, except occasional climbing ramps and stairs and occasional crawling accommodates the claimant's reported difficulty with lifting, standing, and walking. Further, this limitation accounts for the claimant's reported pain and any limited range of motion.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, except that the vocational expert relied on his education, professional training, and experience to determine the impact of limitations not addressed in the DOT, such as the different types of climbing.

CAR 27.

Plaintiff's argument regarding the ALJ's reliance on vocational expert testimony is entirely derivative of Plaintiff's argument concerning his subjective statements and testimony. According to Plaintiff, the hypothetical questions posed to the vocational expert and answers upon which the ALJ relied are incomplete because the ALJ "omitted many of Davidson's credible [subjective] allegations." ECF No. 13-1, pg. 18.  As discussed above, the Court finds that the ALJ did not err with respect to evaluation of Plaintiff's subjective statements and testimony. Accordingly, the Court also finds no error in the ALJ's reliance on vocational expert testimony in response to hypothetical questions which omitted some of those subjective allegations.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 13, is denied;
2. Defendant's motion for summary judgment, ECF No.16, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  May 14, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE